UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| JENNIFER TORRES, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br>v.<br><br>TRANSWORLD SYSTEMS INC.,<br><br>Defendant. | Case No.: 18-cv-1009<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA"), and the Wisconsin Consumer Act, chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Jennifer Torres is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt incurred for personal, family, or household purposes, namely a personal credit card debt.

5. Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that she engaged in a consumer transaction.

6. Defendant Transworld Systems, Inc. ("Transworld") is a foreign business corporation with its primary offices located at 500 Virginia Drive Suite 514, Ft Washington, Pennsylvania, 19034.

7. Transworld does substantial business in Wisconsin and has a registered agent for service of process located at C T Corporation System, 301 S. Bedford St. Suite 1, Madison, Wisconsin 53703.

8. Transworld is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. Transworld is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

10. Transworld is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg 74.

11. Transworld is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

12. On or around March 23, 2017, Transworld mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to "PHYSICIANS OF OB-GYN." A copy of this letter is attached to this complaint as Exhibit A.

13. The alleged debt identified in Exhibit A was incurred only for personal, family, or household purposes, namely, medical services.

14. Each consumer transaction involved agreements to render services and defer payment. Plaintiff was never expected to pay at the time medical services were rendered. The creditor mailed bills to Plaintiff at a later date.

2

15. Upon information and belief, Exhibit A is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

16. Upon information and belief, Exhibit A is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

17. Upon information and belief, Exhibit A was the first written communication Defendant mailed to Plaintiff regarding this alleged debt.

18. Exhibit A contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector to mail to the alleged debt along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit A.

19. Exhibit A also contains the following:

> PHYSICIANS OF OB-GYN
> ACCT #: ▮▮▮9W-▮▮▮9990
> CLIENT REF:
>        CURRENT BALANCE DUE:  $851.46

Exhibit A.

20. Exhibit A states that, as of March 23, 2017, the balance of Plaintiff's account with account numbers ending in 9W and 9990 was $851.46.

21. On or around April 6, 2017, Transworld mailed a debt collection letter to Plaintiff regarding the same alleged debt, allegedly owed to "PHYSICIANS OF OB-GYN." A copy of this letter is attached to this complaint as Exhibit B.

3

22. Upon information and belief, Exhibit B is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

23. Upon information and belief, Exhibit B is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

24. Exhibit B contains the following:

```
                April 06, 2017

PHYSICIANS OF OB-GYN
ACCT #:      ▮9W-▮    9990
CLIENT REF:
        CURRENT BALANCE DUE:   $851.46
```

Exhibit B.

25. Exhibit B states that, as of April 6, 2017, the balance of Plaintiff's account with account numbers ending in 9W and 9990 was $851.46.

26. On or around April 20, 2017, Transworld mailed a debt collection letter to Plaintiff regarding the same alleged debt, allegedly owed to "PHYSICIANS OF OB-GYN." A copy of this letter is attached to this complaint as Exhibit C.

27. Upon information and belief, Exhibit C is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

28. Upon information and belief, Exhibit C is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

29. Exhibit C contains the following:

```
PHYSICIANS OF OB-GYN
ACCT #:      ▮9W-▮    9990
CLIENT REF:
        CURRENT BALANCE DUE:   $851.46
```

Exhibit C.

30. Exhibit C states that, as of April 20, 2017, the balance of Plaintiff's account with account numbers ending in 9W and 9990 was $851.46.

31. On or around May 18, 2017, Transworld mailed a debt collection letter to Plaintiff regarding the same alleged debt, allegedly owed to "PHYSICIANS OF OB-GYN." A copy of this letter is attached to this complaint as Exhibit D.

32. Upon information and belief, Exhibit D is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

33. Upon information and belief, Exhibit D is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

34. Exhibit D contains the following:

```
CREDITOR: PHYSICIANS OF OB-GYN
ACCT #:         9W-        9990
CLIENT REF:
          CURRENT BALANCE DUE:    $851.46
```

Exhibit D.

35. Exhibit D states that, as of May 18, 2017, the balance of Plaintiff's account with account numbers ending in 9W and 9990 was $851.46.

36. On or around September 11, 2017, Transworld mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to "PHYSICIANS OF OB-GYN." A copy of this letter is attached to this complaint as Exhibit E.

37. The alleged debt identified in Exhibit E was incurred only for personal, family, or household purposes, namely, medical services.

38. Upon information and belief, Exhibit E is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

39. Upon information and belief, Exhibit E is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

40. Exhibit E contains the following:

```
DATE: 09/11/17
OUR ACCOUNT #: ▮▮▮1009
CREDITOR: PHYSICIANS OF OB-GYN
CREDITOR'S ACCOUNT #: ▮▮9W-▮▮▮9990▮▮017
CURRENT BALANCE DUE: $862.52
```

Exhibit E.

41. Exhibit E states that, as of September 11, 2017, the balance of Plaintiff's account with account numbers ending in 9W and 9990 was $862.52.

42. From the face of Exhibits A-E, it is impossible to determine whether Exhibit E is attempting to collect the same debt as Exhibits A-D.

43. The balance stated in Exhibit E is slightly higher than the balance stated in Exhibits A-D.

44. The "CREDITOR'S ACCOUNT #" stated in Exhibit E is almost, but not quite, identical to the "ACCT #" stated in Exhibits A-D.

45. Exhibits A-D do not contain an "OUR ACCOUNT #," which could be cross-checked against the "OUR ACCOUNT #" stated in Exhibit E.

46. Moreover, Exhibit E also contains the following text:

> You can pay the above account in 6 equal consecutive monthly payments of $143.74.
>
> This offer may expire without notice. Before making payment, please confirm with one of our representatives that this offer has not expired.
>
> Please contact our office at 877-870-7255 for details.

Exhibit E.

47. Six payments of $143.74 would total $862.44, slightly less than $862.52. On the face of Exhibit E it is impossible to determine whether Transworld, or the creditor, would report

6

that the debt was "paid in full" or "settled in full" if a consumer made payments according to the schedule stated in Exhibit E.

48. Upon information and belief, the statement that "This offer may expire without notice," is a material false, deceptive, and misleading statement.

49. The alleged debt referenced in Exhibit E is an unsecured medical debt. Upon information and belief, the payment plan stated, payment of the balance in six equal, consecutive, monthly payments of $143.74 would be available at any time. Six payments of $143.74 would total $862.44, or 99.99% of the alleged total balance stated in Exhibit E, $862.52.

50. The statement that "This offer may expire without notice," is intended to confuse and intimidate the unsophisticated consumer into paying the debt rather than attempting to resolve the account some other way, such as by disputing the debt or filing a bankruptcy. *See DeKoven v. Plaza Assocs.*, 599 F.3d 578, 579 (7th Cir. 2010).

51. A statement that an offer "expires" when it does not is a material false statement. *DeKoven*, 599 F.3d at 579 ("while a debt collector can, if authorized by the creditor whom he is representing, make his initial offer a final one, he cannot pretend that it is final if it is not, in the hope that the debtor will think it final.").

52. Moreover, the purported offer is unclear as to whether payment would satisfy the debt stated in Exhibits A-D, which is associated with a slightly lower balance and an almost, but not quite, identical account number to the debt stated in Exhibit E. *See Aker v. Americollect, Inc.*, 854 F.3d 397, 399-400 (7th Cir. 2017) (discussing the charging of interest in the context of medical debts in Wisconsin).

7

Case 2:18-cv-01009-JPS    Filed 07/02/18    Page 7 of 19    Document 1

### *FDCPA Violations*

53. The statement in <u>Exhibit E</u> that "This offer may expire without notice" is false, deceptive, misleading, and confusing and to the unsophisticated consumer. Such broad, open-ended language is inherently confusing to the consumer and an unfair collection practice.

54. The consumer has no way to know from <u>Exhibit E</u> whether the debt collector and/or the creditor would treat a payment of the purported "settlement" amount as an actual settlement (i.e. releasing Plaintiff from any remaining liability) of the alleged debt. The debt collector, or the creditor, could potentially charge interest on the account.

55. Transworld's language leaves open the possibility that the consumer will make a payment of the offered amounts, only to be informed that the offer has since expired and Transworld, or the creditor, will continue to collect on the remaining balance.

56. The consequences of misleading a consumer with respect to settling a debt are much greater than misleading about the amount of the debt. A payment of the entire debt would leave pennies or, at most, a few dollars left over for payment later. *See eg. Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000). Due to an "unsatisfied" settlement, however, Transworld could continue to collect the remaining balance – 40% – of the alleged debt, plus any additional interest that had accrued.

57. An unsophisticated consumer would interpret the statement that she must tender payment "promptly" to mean that, "if they don't pay by the deadline, they will have no further chance to settle their debt for less than the full amount . . . ." *Al v. Van Ru Credit Corp.*, No. 17-CV-1738-JPS, 2018 U.S. Dist. LEXIS 70321 *8-10 (E.D. Wis. Apr. 26, 2018); *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775 (7th Cir. 2007).

58. A false statement that a settlement offer is only available for a limited time is a material false statement because it imparts a false belief in the unsophisticated consumer that he or she must hurry to take advantage of the limited-time opportunity, when in reality, there is no such time limit. *See Nelson-McGourty v. L. & P Fin. Adjusters, Inc.*, 2010 U.S. Dist. LEXIS 81819, *44 (N.D. Ill. Aug. 12, 2010); *see also Ozkaya v. Telecheck Servs.*, 982 F. Supp. 578, 584 (N.D. Ill. Oct. 23, 1997); *Evory*, 505 F.3d at 775.

59. In order to preserve debt collectors' negotiating positions and prevent the settlement process from disintegrating, while still enforcing the congressional mandate prohibiting debt collectors from making false, deceptive, and misleading representations, the Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word "obligated is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory*, 505 F.3d 769 at 775-76.

60. The Seventh Circuit developed this language with the express purpose of preventing debt collectors from using confusing, intimidating, and threatening statements that impart a false sense of urgency in consumers.

61. Rather than using the safe-harbor language prescribed by the Seventh Circuit for debt collectors stating an offer will "expire," Transworld used language that is even more open-ended, confusing, intimidating, and threatening, and leaves consumers with an even greater sense of uncertainty and urgency regarding the proposed offer.

9

62. Moreover, Transworld's failure to provide an expiration date for its settlement offer is a material misrepresentation because it misleads the unsophisticated consumer about a material term of the settlement offer. *Evory*, 505 F.3d at 775-76; *see Smith v. Nat'l Enter. Sys., Inc.*, 2017 U.S. Dist. LEXIS 47701, *13 (W.D. Okla. Mar. 30, 2017) (because debt collector's purported time-sensitive settlement offer included an obviously misprinted expiration date that had already passed, "any consumer receiving [it] would be left to wonder about a material term of the offer, that is, the deadline for acceptance.").

63. The unsophisticated consumer, being told she must take advantage of the offer before it expires---without notice---would feel intimidated into paying. *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 ("Confusing language in a dunning letter can have an intimidating effect by making the recipient feel that he is in over his head and had better pay up rather than question the demand for payment.").

64. Moreover, the instruction to call Transworld to confirm that the offer is still available prior to paying is a false, deceptive, misleading, and unfair means of attempting to collect the debt.

65. Upon information and belief, the offer is available at any time. The purpose of instructing the consumer to call Transworld is to induce alleged debtors to call Transworld's offices, whereupon Transworld uses high-pressure tactics to induce alleged debtors into paying those debts. *DeGeorge v. Fin. Recovery Servs.*, 2012 U.S. Dist. LEXIS 140966, at *25 (E.D. Penn. Sept. 27, 2012) (plaintiff stated claim that defendant engaged in unfair debt collection practices by sending letters that "required plaintiff to contact defendant to take advantage of a discount, thereby exposing plaintiff to additional pressures of in-person communication.").

10

66. Exhibit A falsely threatens that Transworld, or the creditor, will revoke the payment plan offered in Exhibit A. *See Al v. Van Ru Credit Corp.*, 2018 U.S. Dist. LEXIS 70321, at *8-10 (E.D. Wis. Apr. 26, 2018).

67. Plaintiff was deceived, misled, and confused by Exhibit A.

68. The unsophisticated consumer would be deceived, misled, and confused by Exhibit A.

69. Plaintiff had to spend time and money investigating Exhibit A, and the consequences of any potential responses to Exhibit A.

### *The FDCPA*

70. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized *Derosia v. Credit Corp. Solutions*, 2018 U.S. Dist. LEXIS 50016, *12, 2018 WL 1513043 (E.D. Wis. March 27, 2018); *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist.

11

LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated*

12

*Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

71. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

72. 15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

73. 15 U.S.C. § 1692e(2)(A) specifically prohibits "the false representation of the character, amount, or legal status of any debt."

74. 15 U.S.C. § 1692e(5) specifically prohibits debt collectors from making a "threat to take any action that cannot legally be taken or that is not intended to be taken."

75. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

76. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

## The WCA

77. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

78. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

79. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

80. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

81. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

82. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See*

Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

83. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

84. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

85. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

86. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

87. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited."). *See Al*, 2018 U.S. Dist. LEXIS 70321, at *5, *10-11 n.2.

## COUNT I – FDCPA

88. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

89. <u>Exhibit E</u> includes an offer that is misleading as to the amount necessary to effectuate the settlement and when the offer may expire.

90. A consumer who mails a payment in the full amount of the "settlement amount" listed on the letter, on or near the deadline on the letter, may not have actually settled the claim if Transworld decides, on its own whim, that the offer expired prior to the payment.

91. A consumer who receives a letter that includes a "Limited Time" settlement offer that does not contain an expiration date would be deceived, misled, and confused about the deadline for acceptance, which is a material term of the offer. *See Smith*, 2017 U.S. Dist. LEXIS 47701 at *14; *Al*, 2018 U.S. Dist. LEXIS 70321, at *6-8.

92. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692f.

## COUNT II – FDCPA

93. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

94. <u>Exhibit E</u> includes false statements that mislead consumers to believe that any settlement offer made is a limited time offer and failure to accept the offer before its "expiration" would result in the debtors' inability to settle the debt for less than the full amount. *Evory*, 505 F.3d at 775-76; *Al*, 2018 U.S. Dist. LEXIS 70321, at *8-10.

95. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f.

## COUNT III – FDCPA

96. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

97. Exhibit E includes threats to revoke the settlement offers at any time and without notice even though neither Transworld nor the creditor intended to revoke these offers. *Al*, 2018 U.S. Dist. LEXIS 70321, at *8-10.

98. Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692f.

## COUNT IV – WCA

99. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

100. Transworld is a licensed Collection Agency.

101. Transworld's conduct violates the Federal Fair Debt Collection Practices Act.

102. Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## CLASS ALLEGATIONS

103. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit E to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between July 2, 2017 and July 2, 2018, inclusive, (e) that was not returned by the postal service.

104. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

105. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members.

The predominant common question is whether the Defendant complied with the FDCPA and the WCA.

106. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

107. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

108. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

109. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: July 2, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000

(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com